16 MAG 3042

ORIGINAL

Approved: _____
         JESSICA K. FENDER
         Assistant United States Attorney

Before:   THE HONORABLE RONALD L. ELLIS
          United States Magistrate Judge
          Southern District of New York



U.S. DISTRICT COURT FILED MAY 12 2016 S.D. OF N.Y.

DOC # _____

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :  SEALED COMPLAINT

           - v. -                  :  Violations of
                                      18 U.S.C. §§ 371, 1546(a)
SANNY NEMIS,                       :
                                      COUNTY OF OFFENSE:
           Defendant.              :  NEW YORK

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   MATTHEW MAGUIRE, being duly sworn, deposes and says that he is a Special Agent with the Diplomatic Security Service ("DSS"), U.S. Department of State ("State Department") and charges as follows:

## COUNT ONE

   1.   From in or about March 2009, up to and including at least in or about March 2013, in the Southern District of New York and elsewhere, SANNY NEMIS, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, immigration fraud in violation of Title 18, United States Code, Section 1546(a).

   2.   It was a part and object of the conspiracy that SANNY NEMIS, the defendant, and others known and unknown, would and did knowingly make under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribe as true, false statements with respect to material facts in applications, affidavits, and other documents required by the immigration laws and regulations prescribed thereunder, and knowingly presented such applications, affidavits, and other documents which contained such false statements and which failed to contain any reasonable basis in

law and fact, to wit, NEMIS and others prepared and submitted fraudulent applications in support of H-1B visa applications, in violation of Title 18, United States Code, Section 1546(a).

### Overt Act

3.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt act, among others, was committed in the Southern District of New York and elsewhere:

   a.   In or about 2012, SANNY NEMIS, the defendant, sent emails to a cooperating witness ("CW-1")[1] in which NEMIS instructed CW-1 to provide false information to consular officials during CW-1's interview in support of CW-1's application to obtain an H-1B visa.

(Title 18, United States Code, Section 371.)

The bases for deponent's knowledge and for the foregoing charge are, in part, as follows:

4.   I am a Special Agent with the Document and Benefit Fraud Task Force of DSS, and I have been personally involved in the investigation of this matter. I have been a Special Agent for approximately 14 years. During that time, I have received training in investigating various forms of visa fraud and I have been involved in numerous such investigations.

5.   I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents and reports of the investigation, criminal history records, and other records, and from my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

---

[1] CW-1 is facing charges of violating the immigration laws of the United States, and is cooperating in the hope of leniency. The information provided by CW-1 as part of the investigation has proven reliable and has been confirmed by other sources.

2

## BACKGROUND ON H-1B VISAS

6.  From my training and experience, I have learned about the requirements that foreign citizens and nationals must comply with under United States immigration law, including the following:

   a.  The "H-1B Specialty (Professional) Workers" program is administered by the Department of Homeland Security ("DHS") in consultation with the State Department, and allows a domestic employer to temporarily employ a foreign worker on a nonimmigrant basis if, among other things:

   i.  The domestic employer has an "employer-employee" relationship with the foreign worker; that is, the foreign worker has accepted a job with the domestic employer at the specified location;

   ii.  The job with the domestic employer qualifies as a "specialty occupation." A specialty occupation requires the theoretical and practical application of a body of specialized knowledge, and a bachelor's degree or the equivalent in the specialty occupation. Specialty occupations typically require a bachelor's or higher degree or its equivalent and include, but are not limited to, occupations such as computer programmers, scientists, teachers, nurses, and engineers; and

   iii.  The domestic employer will pay the foreign worker at least the actual or prevailing wage for the job, whichever is higher.

   b.  A domestic employer wishing to sponsor a foreign worker on an H-1B visa must first petition the Department of Labor ("DOL") for approval by submitting a Labor Condition Application ("LCA") for Nonimmigrant Workers to the DOL. The purpose of the LCA is to ensure that the domestic employer is prevented from undercutting the U.S. job market by paying a foreign worker less than the prevailing wage for the job.

   c.  Once the LCA is approved, the domestic employer prepares a Petition for a Nonimmigrant Worker form (an "I-129 Petition") for every foreign worker it wishes to employ, and submits the I-129 Petition to a processing center. Among other things, the I-129 Petition requires the name and biographical data of the proposed foreign worker, the proposed job description, the proposed wage to be paid, and the address where the foreign worker will be working.

3

    d. The I-129 Petition requires the domestic employer to "certify, under penalty of perjury that this petition and the evidence submitted with it are true and correct. . . . If filing this petition on behalf of an organization, I certify that I am authorized to do so by the organization." In the instructions accompanying the I-129 Petition, the employer is advised that "[b]y signing this form, you have stated under penalty of perjury (28 U.S.C. § 1746) that all information and documentation submitted with this form is true and correct." The instructions also warn that "[i]f you knowingly and willfully falsify or conceal a material fact or submit a false document with your Form I-129 . . . you will face severe penalties provided by law and may be subject to criminal prosecution." Thus, when an employer signs the I-129 Petition, the employer assumes the legal responsibility for the truth and accuracy of all information submitted.

## THE PRESCHOOL TEACHER SCHEME

  7. In or about 2012, the State Department received a referral from the Bureau of Consular Affairs Kentucky Consular Center, Fraud Prevention Unit. According to that referral, and the supporting documentation provided therewith, I have learned, among other things, the following:

    a. In 2011, a school located in Harlem, New York ("School-1") sponsored two H-1B applicants ("Applicant-1" and "Applicant-2") for full-time specialty occupations as preschool teachers.

    b. Upon review of Applicant-1's I-129 Petition, the Fraud Prevention Unit concluded that it had "reasons to believe that the proffered position does not exist . . . [D]uring her interview with the Fraud Prevention Unit (FPU), [Applicant-1] stated in her sworn statement that she 'was never interviewed for the petitioned job' and that her job duties for the proffered position will include 'taking care of babies by putting them to sleep and to clean them when their diapers need to be changed.'"

    c. During her interview, Applicant-1 stated "she has spent a total of USD $10,000.00 for the position," including $6,000 to School-1 for the petition and attorney fees, and $4,000 for other expenses. The Fraud Prevention United noted that "an H-1B worker whether through payroll deduction or otherwise, can never be required to pay expenses related to

4

filing [a] petition that would reduce the worker's pay below [the] required wage rate."

        d.    Upon review of Applicant-2's I-129 Petition, the Fraud Prevention Unit concluded that Applicant-2 was "not qualified for the proffered position" because she lacked the minimal educational requirements.

        e.    The Fraud Prevention Unit concluded that it "suspects that the specialty position of Preschool Teacher for [Applicant-2] may not exist," and "[i]t appears that the position was created for the beneficiary in order to facilitate immigration to the United States.

        f.    As a result, both Applicant-1 and Applicant-2 were denied H-1B visas.

        g.    SANNY NEMIS, the defendant, signed the I-129 Petitions on behalf of School-1 in support of Applicant-1 and Applicant-2.

    8.    On or about December 10, 2013, I and another law enforcement agent interviewed SANNY NEMIS, the defendant. During that interview, NEMIS stated, in sum and in part, and among other things, that:

        a.    NEMIS was the Educational Director for School-1, and as such, had been responsible for the daily operation of School-1 since about August 2008;

        b.    In that position, NEMIS had caused numerous I-129 Petitions to be filed in which he sponsored individuals from the Philippines for employment in the specialty occupations of "preschool teacher" or "group teacher" (the "Applicants");

        c.    NEMIS filed I-129 Petitions for Applicants knowing that, among other things:

            i.    School-1 did not have full-time specialty occupations available for the Applicants;

            ii.    Certain Applicants lacked the experience required for the specialty occupation;

            iii.    Certain Applicants would work at School-1 as "volunteers" without pay; and

    iv. Certain Applicants would not be employed at School-1 in any capacity;

   d. NEMIS charged between $7,000 to $10,000 for each Applicant that he sponsored, and he required each Applicant to pay the full fee directly to him before coming to the United States; and .

   e. In addition to School-1, NEMIS had an arrangement with two other schools in New York, New York ("School-2" and "School-3," respectively), whereby he attempted to place Applicants in the employ of those schools. NEMIS provided the names of a number of Applicants he was responsible for sending to School-2 or School-3, and from whom he had received a fee.

  9. In November and December 2014, I spoke with the Director of School-2 (the "Director"). During that conversation, the Director stated, in sum and in part, and among other things, that:

   a. A number of the Applicants named by SANNY NEMIS, the defendant, currently worked, or had worked, at School-2;

   b. The prior director of School-2 had died in 2012; thereafter, the Director learned that the prior director had had an agreement with NEMIS to bring in "teachers from the Philippines";

   c. Under the agreement, NEMIS would call the Director when he had a "candidate" for an open position at School-2. The Director and others would interview the candidate, and determine whether to offer the candidate a position. The candidate was already in the United States at the time the hiring decision was made;

   d. The Director was not under any obligation to hire the candidates presented by NEMIS, and did not receive any funds from NEMIS when School-2 hired a candidate who had been referred by NEMIS; and

   e. None of the Applicants who worked at School-2 had initially worked as a full-time preschool teacher.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of SANNY NEMIS, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

*[signature]*

MATTHEW MAGUIRE
Special Agent
Diplomatic Security Service

Sworn to before me this
12th day of May, 2016

*[signature]*

THE HONORABLE RONALD L. ELLIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7