UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____
                                        :
UNITED STATES OF AMERICA      :   16 Cr. 498 (DAB)
                                        :
    -against-                           :
                                        :
SANNY NEMIS                             :
                                        :
_____:

# DEFENDANT'S SENTENCING SUBMISSION

                                        **Matthew J. Kluger, Esq.**
                                        **184 East 161st Street**
                                        **Bronx, New York  10451**
                                          **(718) 293-4900**

# MATTHEW J. KLUGER
ATTORNEY AT LAW

184 EAST 161st STREET, 2nd FLOOR<br>
BRONX, NEW YORK 10451<br>
(718) 293-4900 • FAX (718) 618-0140<br>
www.klugerlawfirm.com

April 24, 2017

By ECF/Hand Delivery
Honorable Deborah A. Batts
United States District Court Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    **United States v. Sanny Nemis**
                **16 Cr. 498 (DAB)**

Dear Judge Batts:

      This letter and its attachments are respectfully submitted on behalf of defendant Sanny Nemis in advance of his sentencing.[1] On November 29, 2016, pursuant to a written plea agreement with the Government, Sanny Nemis appeared before your Honor and pled guilty to the sole count of the Indictment charging him with conspiracy to commit visa fraud in violation of 18 U.S.C. §371 and 18 U.S.C. §1546(a). Based upon an offense level of 12 and a criminal history category of I,[2] the parties have stipulated that the advisory United States Sentencing Guidelines range for this case is 10 to 16 months' imprisonment. Probation agrees with this calculation and, taking into account all of the relevant 18 U.S.C. § 3553(a) factors, recommends a non-guidelines sentence of two-years' probation. Perhaps not surprisingly, for similar reasons, the defense concurs with this recommendation and respectfully requests that the Court sentence Mr. Nemis to two-years' probation.[3]

      In further support of this request, counsel has attached the following exhibits for the Court's review and consideration:

---

[1] The Court adjourned this matter *sine die* on March 8, 2017. Accordingly, no date has been set yet for sentencing.

[2] Mr. Nemis has never no previous arrests and zero criminal history points.

[3] Mr. Nemis was released on a $100,000 PRB with conditions following his presentment in Magistrates Court on May 25, 2016. Pretrial reports that Nemis has remained in compliance with the conditions of his release.

2

**Exhibit A:**   Letters to the Court from individuals at Mary Walton Children's Center:

*"Not only do I like Sanny, I also respect him greatly. I feel honored to be asked to provide this character reference and hope that it helps [the Court] understand what an outstanding individual Sanny Nemis is."*
-Nina Best

*"Mr. Nemis has proven to be a valuable friend, who is always very reliable, honest, dependable and hard working."*
-Monica Findlay

*"I cannot say enough good things about Mr. Nemis.  [H]e is a caring, motivated, and very compassionate human being."*
-Uzuri Irene Baezer, Educational Consultant

*"Since Mr. Nemis's tenure, our enrollment of young children has doubled. He is reliable, punctual, detailed oriented, and when given a task to perform, assumes the responsibility without hesitation."*
-Altagracia Moguel, Board President

**Exhibit B:**   Letters to the Court from friends and family:

*"I respect him as a person of good moral character and as a bright spot in our church community. . . [Sanny] is a decent, hardworking, and trustworthy person."*
-Rev. Fr. Jovy Carungay

*"Sanny is a sensible professional along with being one of the most upstanding people I know and I have the utmost confidence in his judgment and maturity."*
-Loubella C. Calicdan

*". . .good moral character, loyal, hardworking, caring, compassionate, detailed oriented, committed and devoted to his spiritual growth."*
-Teodora L. Mendoza

*"We would greatly appreciate it if you would give [Sanny] another chance to continue his American dream."*
-Elmer B. Alcaraz et al.

These exhibits, together with the instant defense submission are provided to supplement the Presentence Report (*PSR*) and provide the Court with additional information necessary to determine a sentence which is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  As noted by the Supreme Court, "[h]ighly relevant - if not essential - to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." Williams v. New York, 337 U.S. 241, 246-247, 69 S. Ct. 1079 (1949). This "ensures that the punishment will suit not merely the offense *but*

3

*the individual defendant as well*." <u>Wasman v. United States</u>, 468 U.S. 559, 564, 104 S. Ct. 3217 (1984)(emphasis added).  (<u>See</u> also <u>Pepper v. United States</u>, 131 S. Ct. 1229 (Sotomayor, J.)).

Accordingly, while this submission may seek to explain or mitigate certain facts and behavior, nothing in this submission is intended to dispute, change, or challenge any provision of the plea agreement.  Moreover, Mr. Nemis has accepted full responsibility for his actions and nothing presented herein is meant to justify or excuse his conduct in any way.

### Sentencing After *United States v. Booker*

The Sentencing Guidelines are of course no longer mandatory, and while still important and instructive, they remain just one of the many factors set forth in 18 U.S.C. § 3553(a), which a sentencing court must consider in determining a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  Section 3553(a)(2) states that these purposes are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

To arrive at such a sentence, the Court is further directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the kinds of sentences available; (3) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (4) policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution to any victims of the offense.  <u>See</u> 18 U.S.C. § 3553(a)(1), (a)(3)-(7).

### Here, the 18 U.S.C. § 3553(a) Factors Mitigate in Favor of a Non-Guidelines Sentence of Probation

As all who know him readily attest, the conduct that brought Sanny Nemis before this Court is an aberration, and completely out of character for a man who has otherwise lived his life as a moral, decent, law-abiding person.  Sanny Nemis is gentle, soft-spoken, and diffident to a fault.[4]  As the letters from his co-workers and employer confirm, he is *very* good at what he does.  Not surprisingly, students and parents *love* him, and he has

---

[4] Frankly, having represented well over a thousand clients, it is defense counsel's informed opinion that Sanny Nemis would not last a day in a prison environment.

4

been a driving force behind the growth and success of the Mary Walton Children Center for many years.

Sanny Nemis grew up poor in the Philippines. He is the fifth of seven children born to the marital union of Agapito Nemis (deceased) and Ludivina Montefar (deceased). As a young man, Nemis washed his neighbor's clothes at night to earn money for school and church. In 2001, Nemis himself came to the United States legally as a beneficiary of the H-1B visa program. He taught pre-school, earned a Master's degree in early childhood education, and ultimately became the Educational Director of the Mary Walton Children's Center in Upper Manhattan, where has worked since 2008. In short, while Nemis has enjoyed the American dream, he has also been a productive, responsible member of the community as well.

This is *not* a case where someone promises unsuspecting, vulnerable, individuals in other countries visas in return for money, without having the means or intention to ever secure those visas. In other words, while this was a fraud, it wasn't a scam. The early childhood education field routinely brings teachers to the United States legally through the H-1B program. Indeed, through Nemis, Mary Walton *itself* sponsored several excellent teachers who came to the school legally under the H-1B program and still work there to this day. Nemis's stated goal in doing this was not only to bring good, qualified talent to his school, but to help others, like himself, escape poverty and live the American dream.

However, Nemis lost sight of this admirable goal and crossed the line into criminal conduct when, after having received payments from individuals in the Philippines interested in obtaining H-1B visas, he began to overlook the stringent requirement of the program or ignore them altogether. In the end some individuals received H-1B visas and came to the United States but never worked at, or intended to work at, Mary Walton; others never even made it to the United States after Customs officials determined that their applications contained false and misleading information. And, while Mr. Nemis may not have been aware of everything, he certainly knew enough to be complicit in the fraud, particularly when he was receiving payment for helping to facilitate it.

In the end, Mr. Nemis became willfully blind to his own fraudulent conduct. Indeed, given his background and skill set, the Government is correct that Nemis *should* have known better. (See Government Sentencing Submission). That being said, Probation has good reason to recommend a probationary sentence in this case. For one thing, at 47-years old, this is Mr. Nemis' first criminal transgression and there is little reason to think that it will be repeated. Second, although the Government characterizes this fraud as "pervasive" and long-lasting, in defense counsel's experience, it was relatively small, with less than ten fraudulent applications in total over a period of a few years. And finally, Nemis' history and characteristics are nothing less than extraordinary. As discussed above, since arriving in the United States in 2001, Nemis has been consistently employed, been an active member of his church, earned a Master's degree, and has been an inspiration to the many people who know him and work for him.

Finally, in addition to his own students and employees, incarcerating Nemis would have a devastating effect on his family as well.  In 2012, the defendant's brother-in-law was left paralyzed following a stroke.  In response, the defendant forewent his own personal life, moved in with his sister, and has helped her raise her three children as if they were his own.  The defendant is particularly close with his 6-year old nephew Jaiden, coming home from work every day at 5:00 p.m. to help with homework, cook, and clean, until his mother comes home from work at 8:00 p.m.  The defendant's selfless response to this tragic situation speaks volumes about his true character, work-ethic, and commitment to family.[5]

**<u>Sentence Request and Conclusion</u>**

Admittedly, Sanny Nemis has committed a serious offense and must be punished accordingly.  While a strong message must be sent that this type of illegal behavior cannot be tolerated, an incarceratory sentence deals too harsh a blow in this case.  Punishment which is too severe works an injustice and is greater than necessary to achieve the goals and purposes of sentencing.  Here, as Probation somewhat uncharacteristically, but thankfully, observed, a guidelines sentence is unwarranted and greater than necessary.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."  <u>Gall v. United States</u>, 552 U.S. 38, 52 (2007)(quoting <u>Koon v. United States</u>, 518 U.S. 81, 96 (1996).  Here, an otherwise good person made a mistake, demonstrated poor judgment, and did a bad thing.  As any person of good moral character would be, Nemis is ashamed, remorseful, and embarrassed by his actions.  Arguably though, more devastating to Nemis and his family than anything else, is the very real possibility that he will be deported as a result of this conviction.

This Court has the discretion and wisdom to fashion a sentence which best fits this defendant and the facts of this case.  The proposed sentence of two-years' probation is sufficient but not greater than necessary to achieve the goals of sentencing.  Moreover, it takes into account all of the mitigating §3553(a) factors present in this case while providing just punishment, respect for the law, and adequate deterrence.

Thank you.

Respectfully submitted,

/s/ *Matthew J. Kluger*
Matthew J. Kluger, Esq.
Attorney for Sanny Nemis

cc:    A.U.S.A. Jessica Fender (email/ECF)

---

[5] Additional offender characteristics are adequately addressed in Part C of the Probation Report.